IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELMARIE KORFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-572 |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

AND NOW, this 1st day of February, 2024, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 30) filed in the above-captioned matter on October 27, 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 24) filed in the above-captioned matter on August 28, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**     **Background**

Plaintiff Nelmarie Korff protectively filed a claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, effective June 15, 2015, claiming that she became disabled on September 12, 2012, due to bipolar disorder, anxiety, depression, obsessive compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), and sleep apnea. (R. 24, 221-22, 261). After being denied initially on November 10, 2015, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ").

(R. 24, 116-20, 123-24). Plaintiff appeared at her first hearing on October 19, 2017 without counsel. After being advised of her right to representation, Plaintiff elected to proceed with the hearing. However, the ALJ, realizing that Plaintiff needed assistance in obtaining additional evidence, took testimony to assist in getting that evidence, held the record open, and arranged for Plaintiff to attend two consultative examinations. (R.24, 46-56). A second hearing was held on February 7, 2019, and Plaintiff again appeared without representation. After again being advised of her right to counsel, Plaintiff decided to proceed. (R. 57-103). In a decision dated March 11, 2019, the ALJ denied Plaintiff's request for benefits. (R. 24-39). The Appeals Council declined to review the ALJ's decision on May 15, 2020. (R. 13-16). After seeking and receiving several requests for additional time, Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by

substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is

3

not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 404.1520(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 404.1545(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ

determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  *See id.* at § 404.1520(a)(4)(v).  In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience.  *See id.*  The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled.  *See id.* at § 404.1523.

### III.    The ALJ's Decision

In his March 11, 2019 decision, the ALJ found that Plaintiff met the insured requirements of the Act through June 30, 2016.  (R. 26).  He then proceeded to apply the sequential evaluation process, finding that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of September 12, 2012.  (*Id.*).  The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically osteoarthritis, carpal tunnel syndrome, fibromyalgia, asthma, bipolar disorder, major depressive disorder, generalized anxiety disorder, ADHD, and OCD.  He determined that Plaintiff's restless leg syndrome, obesity, and prediabetes did not qualify as severe impairments.  (R. 26-27).  The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three.  (R. 27-31).

The ALJ found that, as of her date last insured, Plaintiff retained the RFC to perform light work with a number of non-exertional limitations, including that she would be limited to routine, repetitive tasks at a Specific Vocational Preparation level of 1 or 2; to work in a static low stress environment that involves only simple decisions; to infrequent changes that would be explained

and/or demonstrated and could be learned in 30 days or less; to no fast-fasted work or work with strict production or time quotas; and to occasional interaction with the general public.  The ALJ further found that Plaintiff would be off task less than 10 percent of the workday to account for her symptoms.  (R. 31).   At Step Four of the process, the ALJ used a vocational expert ("VE") to find that Plaintiff was unable to perform her past relevant work.  (R. 37).  He proceeded to determine, at Step Five, whether there were jobs in the national economy that Plaintiff could perform.  (R. 37-38).  The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff, through her date last insured, could perform a significant number of jobs in the national economy, including the representative occupations of photocopy machine operator, routing clerk, and price marker.  (R. 38, 98).  Accordingly, the ALJ found that Plaintiff was not disabled as of her date last insured.  (R. 38).

**IV.**    **Legal Analysis**

Plaintiff, who is proceeding *pro se*, raises several arguments as to why she believes that the ALJ's decision is not supported by substantial evidence.  While the Court does not reach most of these arguments, it does agree with Plaintiff that the ALJ erred in failing to consider an August 17, 2018 letter from Robert Crossey, D.O., in evaluating Dr. Crossey's July 10, 2018 opinion as to Plaintiff's functional capacity.  Because the ALJ failed to properly evaluate this opinion, and because this opinion was part of the evidence upon which he relied in formulating Plaintiff's RFC, the Court holds that this finding is not supported by substantial evidence and, accordingly, that remand is warranted.

Dr. Crossey, who is Plaintiff's primary care physician ("PCP"), submitted a medical source statement regarding Plaintiff's mental functioning dated July 10, 2018, which indicating that Plaintiff had no restrictions from her mental impairments whatsoever.  (R. 831-33).

However, just over a month thereafter, on August 17, 2018, he addressed a follow-up letter to the ALJ advising him that the July 10 statement "was incomplete and could be misleading." (R. 834). Dr. Crossey explained that, as Plaintiff's PCP, he had not historically treated Plaintiff for her behavioral issues but rather for asthma, bronchitis, and related issues. He indicated that he had completed the statement because it was sent to him, but emphasized that, while he could opine as to Plaintiff's physical limitations, he could not do so as to her mental limitations. He further confirmed that Plaintiff had, in fact, been diagnosed with bipolar disorder, ADHD, generalized anxiety disorder, OCD, and depression and that she had sought care for these conditions with psychiatrists in his practice. (*Id.*).

In his comprehensive decision, the ALJ discussed Dr. Crossey's opinion contained in the July 10 medical source statement at great length, assigning it "some weight." (R. 35). The ALJ noted that Dr. Crossey had opined that Plaintiff's mental functional abilities were not affected by her impairments and found this to be at least partially supported by the record. He went on to find, though, that the record showed the need to incorporate some mental restrictions into Plaintiff's RFC. At no point in his consideration of Dr. Crossey's opinion did the ALJ discuss or even mention Dr. Crossey's August 17 letter cautioning that this opinion may be misleading or incomplete. (*Id.*).

To be sure, an ALJ "need not mention every piece of evidence in the record." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 743, 747 (3d Cir. 2009). However, in making his findings, an ALJ must consider all of the evidence and "give some indication of the evidence which [he] rejects and [his] reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429). Therefore, as noted above, an ALJ may not ignore, or fail to resolve, a conflict created by countervailing

evidence. *See Morales*, 225 F.3d at 317. Dr. Crossey's August 17 letter was contrary to, and in fact disavowed, the July 10 opinion on which the ALJ relied. The ALJ therefore had to give some indication of how he considered this contrary evidence in explaining his findings.

The Commissioner argues that, pursuant to the governing regulations, the ALJ was required to consider Dr. Crossey's July 10 opinion despite the August 17 letter, citing 20 C.F.R. § 404.1527(b). This is true but misses the point. Certainly, the ALJ was permitted to, and in fact required to consider Dr. Crossey's opinion, but he was required to do so in the context of all the evidence, including the August 17 letter. This letter, given its direct discussion of the July 10 opinion, was uniquely relevant, and any consideration of Dr. Crossey's medical source statement without discussion of the letter, written just a short time after the opinion had been rendered, was clearly insufficient. This is particularly so given that Dr. Crossey did not simply withdraw his earlier opinion but explained how and why it might paint an inaccurate portrait of Plaintiff's functionality and discussed that an accurate source statement would be substantially different.

The Commissioner further argues that, in any event, the ALJ did not adopt Dr. Crossey's opinion outright and that his RFC determination contained numerous mental functional limitations. However, the fact remains that the ALJ considered Dr. Crossey's opinion, assigning it some weight, in determining Plaintiff's functional capacity. It was part of the context in which the RFC was formed. The Court cannot assume that the ALJ's findings would not have changed based on a different assessment of Dr. Crossey's opinion – one performed in light of the August 17 letter – particularly in consideration of the fact that the opinion set forth no functional limitations at all. In essence, the ALJ, in crafting the RFC, expressly gave some weight to an opinion containing no mental functional limitations that the opining physician himself explained was not accurate. The ALJ did so without mentioning or discussing Dr. Crossey's clarification

of the opinion, and the Court cannot determine whether the ALJ rejected this evidence, and if so on what basis, or whether he simply overlooked it. *See Haut v. Colvin*, No. 15-511, 2016 WL 3962020, at *11 (W.D. Pa. July 19, 2016) ("Where the ALJ fails to make mention of significant findings, the reviewing court cannot determine whether he considered and rejected them, considered and discounted them, or failed to consider them at all.") (citing *Fargnoli*, 247 F.3d at 40 n.5). Accordingly, remand is necessary for the ALJ to consider this evidence and explain how it impacts his findings.

Because the Court is remanding the matter on this issue, it need not, and will not, address the other issues raised by Plaintiff.[1] However, the ALJ should be cognizant of those concerns during his reconsideration of the matter. The Court notes that the ALJ clearly took very seriously his duty to assist Plaintiff in compiling the administrative record in light of her lack of representation. However, the one piece of evidence overlooked is too central to important issues in this case for the Court not to remand for further consideration.

## V.     Conclusion

In short, the record does not permit the Court to determine whether the ALJ's decision is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

---

[1] Because it is the need for additional explanation by the ALJ that necessitates a remand in this case, the record does not permit the Court to reverse and remand the case for an award of benefits. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Likewise, the Court finds no basis for reversal based on Plaintiff's other arguments and, indeed, the Court emphasizes that it is offering no opinion as to whether the ALJ's findings are incapable of being found to have adequate record support.

ecf:	Counsel of record

cc:	Nelmarie Korff
	1165 Jefferson Road
	Pittsburgh, PA 15235